UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CARLINE JEAN-PIERRE,                          :
                                              :
                        Plaintiff,            :
                                              :
                                              :          18-CV-0507 (VEC)
        -against-                             :
                                              :          OPINION AND ORDER
                                              :
CITIZEN WATCH COMPANY OF AMERICA,             :
INC., d/b/a BULOVA, GREGORY THUMM,            :
GLENN PARKER, SUSAN CHANDLER and              :
JOHN HUGGARD,                                 :
                                              :
                        Defendants.           :

------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        Plaintiff Carline Jean-Pierre sued Citizen Watch Company of America, Inc., d/b/a

Bulova, and individual Defendants Gregory Thumm, Glenn Parker, Susan Chandler, and John

Huggard for race and gender-based discrimination and retaliation, pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("§ 1981");

the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.  See* Am.

Compl., Dkt. 21.  Plaintiff also sued for intentional infliction of emotional distress. *See id.*

Defendants have moved for summary judgment on all claims pursuant to Federal Rule of Civil

Procedure 56.  *See* Notice of Mot., Dkt. 53.  Defendants' motion is GRANTED as to all claims.[1]

This case is CLOSED.

---

[1]      The parties both filed motions seeking permission to seal or file redacted versions of documents filed as
exhibits to their motion for Summary Judgment and Opposition to Summary Judgment.  Dkts. 52, 71, 77, 81.  All
four motions are granted.  The parties must file the exhibits with the requested redactions no later than November
25, 2019.

Plaintiff, who is African American, began her employment at Bulova on August 15, 2011. Defs.' 56.1 Stmt. ¶ 44. Bulova is an American watch brand that merged with Citizen Watch Company of America, Inc. ("CWA") in 2017, but continues to function as a division of CWA. Defs.' 56.1 Stmt. ¶¶ 6, 9, 11, 12. After Bulova merged with CWA, in January 2017, Defendant Susan Chandler ("Chandler"), Bulova's Chief Merchandising Officer, was directed to reduce her departmental budget by approximately $300,000. Defs.' 56.1 Stmt. ¶¶ 11, 159; Chandler Dep. at 384:9, 386:20-387:2. On March 20, 2017, Plaintiff was terminated as part of Chandler's cost cutting efforts. Defs.' 56.1 Stmt. ¶ 164.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. Am. Compl. ¶¶ 5-6. This lawsuit followed. Plaintiff alleges numerous adverse employment actions, culminating in termination, because of her race (African American) and gender (female). *See* Pl. Am. Mem. of Law at 11-13. Plaintiff also claims that she was terminated in retaliation for various internal complaints made over the course of her employment at Bulova.[3] *See* Pl. Am. Mem. of Law at 21-22. Plaintiff also claims

---

[2]     All facts described herein are undisputed unless otherwise stated. The Court will refer to the parties' submissions as follows: Defendants' Memorandum of Law in support of their motion for summary judgment, Dkt. 56, as "Defs.' Mem. of Law"; the Affirmation of Michael L. Abitabilo in support of Defendants' motion, Dkt. 57, as "Abitabilo Aff."; Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, Dkt. 54, as "Defs.' 56.1 Stmt."; Plaintiff's Amended Memorandum of Law in Opposition to Defendants' Motion, Dkt. 74, as "Pl. Am. Mem. of Law"; the Declaration of Tracey L. Brown, Dkt. 83, submitted in opposition to Defendants' Motion, as "Brown Decl."; Plaintiff's Statement of Material Facts in Dispute Pursuant to Local Civil Rule 56.1, Dkt. 67, as "Pl.'s 56.1 Resp."; Defendants' Reply Mem. of Law in further support of their motion, Dkt. 79, as "Defs.' Reply Mem. of Law"; Defendants' Reply Affirmation of Michael L. Abitabilo, Dkt. 80, as "Abitabilo Reply Aff." The Court will refer to Plaintiff's deposition, Dkt. 83-2, as "Pl. Dep."; to Susan Chandler's deposition, Dkt. 83-16, as "Chandler Dep."; John Huggard's deposition, Dkt. 83-1 as "Huggard Dep."; and Wilson Troche's deposition, Dkt. 83-4 as "Troche Dep."

[3]     As will be discussed, *infra*, Plaintiff also claims she was retaliated against for being named as a witness in another employee's demand letter to the EEOC. This claim does not appear in the Amended Complaint and was raised for the first time in Plaintiff's Opposition Motion. As a result, the Court need not consider this claim. Regardless, as will be discussed, the claim is insufficient to support a claim of retaliation.

she was subjected to a hostile work environment. *See* Pl. Am. Mem. of Law at 8, 10; Am. Compl. ¶ 1.

### Plaintiff's Experience at Bulova

Plaintiff began working at Bulova as Manager of Merchandising and Product Development, and was later promoted to Senior Product Development Manager. Defs.' 56.1 Stmt. ¶ 50. As Senior Product Development Manager, Plaintiff was responsible for product development and merchandising on the Carvelle by Bulova brand and later on the Wittnauer and Harley Davidson brands. Defs.' 56.1 Stmt. ¶¶ 53-54, 108-09; Pl. Dep. at 59:18-59:22, 82:16, 83:21. Although Plaintiff claims she "earned praise for her thorough, creative and excellent work," she also claims to have experienced discrimination during her years at Bulova. Pl. Am. Mem. of Law at 2, 11-13.

Proceeding chronologically, Plaintiff alleges that, in October 2013, because of her race and gender, she was denied bereavement leave when her husband's grandmother died.[4] Pl.'s Am. Mem. of Law at 11; Pl.'s 56.1 Resp. ¶ 65. Defendants contend that Plaintiff was denied leave because the company's bereavement leave policy extends only to an employee's grandparent. Defs.' 56.1 Stmt. ¶ 65.

On April 16, 2015, Plaintiff requested a more comfortable office chair to accommodate her high-risk pregnancy and pre-existing back condition. Defs.' 56.1 Stmt. ¶ 76; Pl. Am. Mem. of Law at 11. After her initial request was denied, Plaintiff provided a doctor's note confirming that she required a "comfortable" chair. Defs.' 56.1 Stmt. ¶ 83; Abitabilo Aff. Ex. O. Shortly thereafter, Defendant Glenn Parker ("Parker"), the Vice President of Human Resources, told

---

[4] Plaintiff also alleges that Bulova failed to notify her colleagues of her loss, which the company allegedly did for "white counterparts." Pl. Am. Mem. of Law at 11. This allegation was raised for the first time in Plaintiff's opposition motion and is thus accorded no weight.

Plaintiff that they would provide a chair similar to the one Plaintiff had previously found to be comfortable. Defs.' 56.1 Stmt. ¶ 86; Abitabilo Aff. Ex. P. Plaintiff ultimately received the chair she requested approximately two weeks after her initial request. Defs.' 56.1 Stmt. ¶ 88; Pl. Dep. at 150:23. Plaintiff contends that the initial denial of her request for accommodation was due to her gender. Pl.'s 56.1 Resp. ¶¶ 80-81.

Plaintiff also describes two incidents in 2015 during which Defendant Gregory Thumm ("Thumm") allegedly acted inappropriately. Pl.'s 56.1 Resp. ¶¶ 97, 99. Thumm served as the President of Bulova from January 2013 until December 2015, when he was replaced by Jeffrey Cohen ("Cohen"). Defs.' 56.1 Stmt. ¶¶ 37, 103. Plaintiff alleges that during a work-sponsored event in April 2015, Thumm "invaded" her "personal space," and said to her, "I don't know what you think you are doing, but it is not working." Am. Compl. ¶ 23; Pl. Dep. at 282:19; 287:12. Second, Plaintiff alleges that during a meeting in late-2015, Thumm said to her: "Your hair is not naturally straight, right?" Plaintiff found that comment to be "racially offensive." Pl.'s 56.1 Resp. ¶ 100; Pl. Dep. at 277:18-277:20.

In addition, Plaintiff describes two other incidents of rude and allegedly discriminatory behavior by other Bulova employees. Plaintiff claims that on May 13, 2016, Warren Neitzel ("Neitzel"), Bulova's then-in-house counsel, yelled at her about certain account files.[5] Plaintiff also claims that Lee Alessi ("Alessi"), an administrative assistant, purposely excluded her from ordering supplies and would "throw [her] [pay stub] on [her] desk." Pl. Dep. at 236:16-237:9; Pl.'s 56.1 Resp. ¶ 138; Am. Compl. ¶ 48.

---

[5] There is some ambiguity regarding exactly what Neitzel said to Plaintiff. In the Amended Complaint, Plaintiff claims Neitzel said, "You guys really fucked this up." Am. Compl. ¶ 50. In Plaintiff's e-mail regarding the incident, Plaintiff claims Neitzel said, "you guys were assholes." Abitabilo Aff. Ex. X

Plaintiff also alleges that she was denied two promotions over the course of her employment at Bulova. Pl. Am. Mem. of Law at 3. First, Plaintiff claims she was denied a promotion to Brand Manager in October 2013 in favor of Lea Genarro, a white female. *Id*. at 4; Pl. Dep. at 85:14-86:12; 194:20-196:19; Defs.' 56.1 Stmt. ¶¶ 55-56. Plaintiff claims she was denied another potential promotion in 2016 when a role was created for Mallory Moore, a white female, rather than for Plaintiff. Pl. Am. Mem. of Law at 12.

### The Hiring of Susan Chandler

In March 2016 Chandler was hired as the Senior Vice President of Merchandising; she was later promoted to Chief Merchandising Officer. Defs.' 56.1 Stmt. ¶¶ 26-27. Chandler implemented several changes to the reporting structure within the merchandising department. *Id*. ¶ 111. As a result of the restructuring, Plaintiff began reporting to Defendant John Huggard ("Huggard"). *Id*. ¶ 119. Huggard serves as Director of Merchandising and Product Development at Bulova. *Id.* ¶ 29. Plaintiff claims that Chandler "singled out Plaintiff for a demotion within a few weeks of joining Bulova" and significantly reduced her responsibilities. Pl.'s Am. Mem. of Law at 5. Plaintiff alleges that "Chandler's immediate dislike of Plaintiff was clearly based on race." *Id.* Plaintiff also claims that Chandler maintained a file of notes about Plaintiff's performance and reduced the amount of time Plaintiff was permitted to work from home. *Id.*

### Bulova Merger and Restructuring

In early 2017 Chandler was directed to reduce her departmental budget by approximately $300,000. Defs.' 56.1 Stmt. ¶ 159. Chandler determined that the most efficient way to do that was to reduce headcount. *Id.* ¶ 160. Accordingly, Plaintiff and Jin Ah Roe, an Asian female senior designer, were terminated effective March 20, 2017. *Id*. ¶¶ 164-67. The effects of the

merger on Bulova's workforce and budget continued throughout 2017; later in the spring of 2017, Bulova terminated 23 employees and, in total, CWA has laid off approximately 165 employees since the merger, including males and females of various ethnicities. *Id.* ¶¶ 20-21.

Plaintiff alleges discrimination and retaliation based on race and gender in violation of Title VII, 42 U.S.C. § 1981, NYSHRL, and NYCHRL. *See* Am. Compl. ¶¶ 60-67, 69-74, 76-78, 80-84, 87-89, 96-99, 103-105. Plaintiff also accuses the individual Defendants of aiding and abetting violations of NYSHRL and NYCHRL. *Id.* at ¶¶ 91-94, 107-110. Finally, Plaintiff alleges intentional infliction of emotional distress. *Id.* at ¶¶ 112-117.

## DISCUSSION

## I.      Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Courts "construe the facts in the light most favorable to the nonmoving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (internal citation and quotation marks omitted). When evaluating a summary judgment motion in an employment discrimination case, a court should "examine the record as a whole, just as a jury

would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).

A district court is, however, "under no obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). A party opposing a motion for summary judgment must "specifically respond to the assertion of each purported undisputed fact . . . and, if controverting any such fact, [must] support its position by citing to admissible evidence in the record." *Baity v. Kralik*, 51 F. Supp. 3d 414, 417–18 (S.D.N.Y. 2014); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B); *Kalola v. Int'l Bus. Machines Corp.*, No. 13-CV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017). A party may not "rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [her] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). A court need not consider arguments that do not comply with these rules. *See Kalola*, 2017 WL 5495410, at *4. Summary judgment cannot be defeated by the presentation of "but a 'scintilla of evidence' supporting [plaintiff's] claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**II.      Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Claims for Race and Gender-Based Discrimination**

**A.      Plaintiff's Title VII, § 1981, and NYSHRL Claims**

**1.      The Applicable Law**

Discrimination claims brought pursuant to Title VII, § 1981, and NYSHRL are all analyzed using "the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015).

To establish a *prima facie* case of discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

Only the final two elements of the *prima facie* case are in dispute: whether Plaintiff suffered an adverse employment action and whether the record raises an inference of discrimination.

### 2. Plaintiff Has Not Established a Prima Facie Case of Discrimination

#### a. Adverse Employment Action

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001) (internal citation and quotation marks omitted). A materially adverse change is a change in working conditions that "has an attendant negative result, a deprivation of a position or an opportunity." *Davis v. City Univ. of N.Y.,* No. 94-CV-7277, 1996 WL 243256, at *8 (S.D.N.Y. May 9, 1996) (quoting *Medwid v. Baker,* 752 F. Supp. 125, 136–37 (S.D.N.Y. 1990)). The change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal citation and quotation marks omitted). Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities." *Id.* (internal citation and quotation marks omitted).

Plaintiff relies on the following alleged adverse employment actions to establish her *prima facie* case:

- Denial of bereavement leave when her husband's grandmother died;
- Initial denial of a more comfortable office chair to accommodate her pregnancy;
- Denial of her requests to work from home;
- Denial of two promotions;
- Decrease in her role and responsibilities;
- Discriminatory comments and behavior directed at her;
- Keeping of a file regarding her performance;
- Denial of additional pay for work she performed;
- Denial of equal vacation time; and
- Termination

*See* Pl.'s Am. Mem. of Law at 11-13. As explained *infra,* as a matter of law, Plaintiff has proven only that her termination was an adverse employment action that could satisfy her *prima facie* case.

### (i)    Bereavement Leave

Plaintiff claims that the denial of bereavement leave after her spouse's grandmother died constitutes an adverse employment action. Pl. Am. Mem. of Law at 11. Bulova's bereavement leave policy expressly applies to "mother-in-law" and "father-in-law" but only to "grandparent[s]." Abitabilo Aff. Ex. M. Thus, by its terms, the policy does not extend to an employee's spouse's grandparents. Although Plaintiff asserts that the decision to deny bereavement leave was discriminatory and due to her race or gender, she cannot name any other employee who was granted bereavement leave following a death not expressly covered by the policy. Pl.'s 56.1 Resp. ¶ 68; Pl. Dep. at 105:24-106:23. Although it may not have been family-friendly to deny bereavement leave for the time Plaintiff spent attending her husband's grandmother's funeral, the denial was squarely in accordance with the company's policy.

Furthermore, there is no evidence that the denial caused Plaintiff to suffer a "materially adverse change in the terms and conditions of employment." *Weeks*, 273 F.3d at 85. Courts in this District have explained that an employer's refusal to grant days off is not an adverse employment action because "while such actions may have made the work place unpleasant," they do not have any "attendant negative result." *Gutierrez v. City of New York,* 756 F. Supp. 2d 491, 508-09 (S.D.N.Y. 2010)*; see also Terry v. Ashcroft,* 336 F.3d 128, 147 (2d Cir. 2003) (denial of annual leave time was "legally insufficient to constitute an adverse employment action"); *Fridia v. Henderson*, No. 99-CV-10749, 2000 WL 1772779, at *7 (S.D.N.Y. Nov. 30, 2000) (finding poor treatment by supervisors was not a materially adverse employment action

because plaintiff could not demonstrate an attendant negative result). Thus, because Plaintiff has provided no evidence that the denial of bereavement leave had any negative result on the conditions of her employment, it was not an adverse employment action.

### (ii) Delay in Providing a New Office Chair

Plaintiff asserts that Defendants' initial refusal to provide her a more comfortable office chair to accommodate her back condition and high-risk pregnancy constituted an adverse employment action. *See* Pl.'s Am. Mem. of Law at 11-12. Although Defendants claim that they initially denied the request in order to maintain uniformity in the new office space, Plaintiff argues that the denial was due to "discriminatory animus [] based on her gender." Defs.' 56.1 Stmt. ¶ 81; Pl.'s Am. Mem. of Law at 11-12; Pl.'s 56.1 Resp. ¶¶ 80-81.

Defendants provided the requested chair after receiving a doctor's note confirming that an accommodation was required. Defs.' 56.1 Stmt. ¶ 86. Although Plaintiff argues that the two-week delay and required doctor's note was discriminatory and unnecessary, Defendants demonstrated that it is standard company policy to require a doctor's note relative to requests for medical accommodation. Pl.'s 56.1 Resp. ¶ 80; Abitabilo Aff. Ex. Q.

Regardless of Defendant's corporate policies, however, Plaintiff received the requested chair two weeks after her request. That being the case, no reasonable juror could find that the initial denial had a "materially adverse" effect on the conditions of her employment. Although providing a doctor's note may have been a bother to Plaintiff, a "mere inconvenience" does not constitute an adverse employment action. *Galabya,* 202 F.3d at 640 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)).

### (iii)     Requests to Work from Home

Plaintiff asserts that Defendants discriminated against her when they prevented her from working from home.  Pl. Am. Mem. of Law at 12.  After Chandler's arrival at Bulova, she began to restrict all employees' ability to schedule work from home days in advance.  Defs.' 56.1 Stmt. ¶¶ 152-54, Huggard Dep. at 233:2.  The record indicates that Chandler "stopped it for everyone." Huggard Dep. at 233:2-233:3.  Although Plaintiff alleges that her white colleagues were allowed to work from home "without being harassed by their supervisors," she offers no evidence to support that claim or to support her claim that she was "harassed."  Pl. Am. Mem. of Law at 5-6. Moreover, even after Chandler stopped allowing employees to work from home as frequently, Plaintiff acknowledges that she was still allowed to work from home on several occasions.  Pl.'s 56.1 Resp. ¶¶ 155-56.  Regardless, even if Plaintiff were never permitted to work from home, such a restriction does not constitute an adverse employment action.  *See Gutierrez,* 756 F. Supp. 2d at 509.

### (iv)     Denial of Promotions

Plaintiff asserts that Defendants' denial of two potential promotions in 2013 and 2015 constituted adverse employment actions.  Pl. Am. Mem. of Law at 12.  In order to establish an adverse action in a failure-to-promote situation, a plaintiff must demonstrate that she applied for a specific position and was rejected; merely asserting that she requested promotion is not sufficient.  *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998); *see also Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) (dismissing failure-to-promote claims because the plaintiffs failed to allege "that they were interested in a promotion or that there was an open position to which they could have (or would have) applied"); *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004); *Augustine v. Cornell Univ.*, No. 14-CV-7807, 2018 WL

1474402, at *7 (S.D.N.Y. Mar. 26, 2018), *aff'd sub nom. Brown v. Cornell Univ.*, 758 F. App'x 226 (2d Cir. 2019).

Here, Plaintiff alleges she was denied promotion on two separate occasions. First, Plaintiff asserts that she was denied promotion in October 2013 to Brand Manager, "in favor of a white woman who was less qualified." Pl. Am. Mem. of Law at 12; Pl. Dep. at 85:14-86:12, 194:20-196:19; Defs.' 56.1 Stmt. ¶¶ 55-56. Because this claim is time-barred, it cannot support Plaintiff's *prima facie* case.[6]

Second, Plaintiff claims she was denied promotion in 2016 when a "role was created" for a different employee. Pl. Am. Mem. of Law at 12. Plaintiff admitted, however, that she "did not want that particular position," Pl. Dep. at 192:25-193:4, and "wasn't looking to become a brand manager at that stage." Pl. Dep. at 212:14-212:17. Instead, Plaintiff asserts that she "wanted to be promoted within [her] role as a developer." Pl. Dep. at 212:16-212:17.

Because Plaintiff never applied for the brand manager position and merely claims that she wanted to be promoted within her own role, as a matter of law, Plaintiff has not suffered an adverse employment action that can support a *prima facie* case. *See Breland-Starling v. Disney Publ'g Worldwide*, 166 F. Supp. 2d 826, 830 (S.D.N.Y. 2001) (holding that plaintiff could not establish a *prima facie* case of discrimination based on her failure to apply for the "specific--- and indeed nonexistent--- position she desired" and explaining that [t]he law on this question is clear and unmistakable: plaintiff must demonstrate that she applied for a particular position for

---

[6]     Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on May 2, 2017, and filed this lawsuit on January 22, 2018. For Title VII purposes, any alleged conduct that occurred more than 300 days prior to the date of her EEOC charge is time barred. *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004) ("An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act."). The statute of limitations on Plaintiff's § 1981 claim is three years; thus, any claim that arose prior to January 22, 2015 is time barred. The statute of limitations on Plaintiff's NYSHRL and NYCHRL claims is three years from the filing of the lawsuit, and was tolled during the 191-day period the matter was pending at the EEOC. Even with that tolling, however, the alleged incident that occurred in 2013 is still beyond the three year limit.

which she was qualified and may not bring a claim 'merely asserting that on several occasions she . . . generally requested promotion.'").

### (v)     Change in Role and Responsibilities

Plaintiff asserts that restructuring her role constituted an adverse employment action.  Pl. Am. Mem. of Law at 12.  "[T]he receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action."  *Ward v. Shaddock*, No. 14-CV-7660, 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016) (quoting *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014), and collecting other cases); *see also Katz v. Beth Israel Med. Ctr.*, No. 95-CV-7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001).  A plaintiff's subjective "dissatisfaction with the work assigned," absent some evidence that the assignment materially worsened her working conditions, "is insufficient to make out an adverse employment action."  *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428, 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015).

Here, Plaintiff argues that, as a result of Chandler's restructuring, Plaintiff's responsibilities were significantly reduced and that she was "demoted in her reporting structure." Pl.'s Am. Mem. of Law at 12.  By contrast, Chandler claims that she put Plaintiff on a "bigger brand" to maximize her strength of working on product development and "did not demote her." Chandler Dep. at 178:9-180:18.  Plaintiff admits that her salary, benefits, and the physical location of her work did not change as a result of the restructuring.  Pl. Dep. at 229:21-230:14; Chandler Dep. at 178:11-178:13.  *See Galabya,* 202 F.3d at 640 (explaining that material adversity might be indicated by "a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits").  Thus, although Plaintiff argues that she was relegated to performing "administrative support work," Pl. Am. Mem. of Law at 8, and was

subjectively disappointed with her new responsibilities, "dissatisfaction with the work assigned (or not assigned) to [her] by [her] supervisors is insufficient to make out an adverse employment action." *Johnson*, 2015 WL 845723, at *5. *See also Beyer v. Cty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) (Plaintiff must proffer objective indicia of material disadvantage; subjective disappointment is not enough).

### (vi)     Allegedly Inappropriate Comments

In determining whether inappropriate comments in the workplace constitute an adverse employment action, courts "must 'filter out complaints attacking the 'ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.''" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citation omitted). The emphasis on determining whether an employee has experienced *material* adversity reflects the importance of distinguishing "significant from trivial harms." *Id.* Although the employment discrimination laws protect employees from conduct that materially affects their employment conditions, "Title VII [] does not set forth 'a general civility code for the American workplace'" and is not meant to "immunize [an] employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998)).

Here, Plaintiff describes two allegedly inappropriate interactions with Thumm. Although possibly inappropriate, they do not constitute adverse employment actions. First, Plaintiff alleges that Thumm "humiliated her in front of her colleagues by making a negative comment about her African-American hair texture." Pl. Am. Mem. of Law at 4; Pl. Dep. at 278:23-280:16. Second, Plaintiff claims Thumm approached her at a work-related event and said, "I

don't know what you think you're doing, but it's not working."[7] Pl.'s 56.1 Resp. ¶ 97; Pl. Dep. at 287:8-287:12. Although these comments may have been inappropriate, actions or comments "that cause a plaintiff 'embarrassment or anxiety' are insufficient to qualify as an adverse action because such intangible consequences are not materially adverse alterations of employment conditions." *E.E.O.C. v. Bloomberg L.P.,* 967 F. Supp. 2d 816, 872–73 (S.D.N.Y. 2013) (quoting *Miksic v. TD Ameritrade Holding Corp.,* No. 12-CV-1446, 2013 WL 1803956, at *3 (S.D.N.Y. Mar. 7, 2013)). Because Plaintiff has not proffered any evidence that these statements had a material impact on the condition of her employment, they do not constitute adverse employment actions. *See Lee v. N. Y. State Dep't of Health,* Nos. 98-CV-5712 & 99-CV-4859, 2001 WL 34031217, at *1, 16 (S.D.N.Y. Apr. 23, 2001) (explaining that being yelled at and receiving unfair criticism do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of the plaintiff's employment or affect any ultimate employment decisions).

Plaintiff alleges she suffered an additional adverse employment action when Neitzel, Bulova's in-house counsel, "direct[ed] profanity toward her." Pl. Am. Mem. of Law at 13. Plaintiff describes Neitzel's comments toward her as "profanity-laced" and aggressive, but it is unclear what precisely was said. *Id.* at 9. In her complaint, Plaintiff asserts that Neitzel, in reference to a brand Plaintiff worked on, said, "[y]ou guys really fucked this up." Am. Compl. ¶ 50. In the email that Plaintiff sent her supervisors describing the event, however, Plaintiff claimed that Neitzel said, "you guys were assholes." Abitabilo Aff. Ex. X. Regardless of which iteration, if either, is accurate, neither comment constitutes an adverse employment action.

---

[7] The meaning of this comment is unclear. Plaintiff asserts that she "was very confused" and "[had] no idea" what Thumm meant by it. Pl. Dep. at 287:14-287:17. Plaintiff admits, however, that Thumm made "no physical contact with her" and when she stepped away from him he did not call after her. Defs.' 56.1 Stmt. ¶ 98; Pl. Dep. at 288:7-288:10.

Plaintiff offers no evidence to show that Neitzel's comment materially affected the conditions of her employment, and Courts in this District have held repeatedly that "alleged yelling and screaming [do] not amount to materially adverse changes." *Bloomberg,* 967 F. Supp. 2d at 873.

### (vii)    Employee File

Plaintiff alleges that she suffered an adverse employment action when Chandler began keeping a "book of perceived negative actions" regarding Plaintiff.  Pl. Am. Mem. of Law at 12. Plaintiff alleges that Chandler kept notes on her "as a result of her lack of exposure to and suspicion of African-Americans."  Pl.'s 56.1 Resp. ¶ 110.  Plaintiff fails to offer any record evidence to support this conclusory statement.  Although Chandler acknowledged that she took notes after her initial meeting with Plaintiff, Chandler Dep. at 114:5-114:7, Plaintiff has pointed to no evidence demonstrating that Chandler's notetaking affected Plaintiff's employment or contributed in any way to her termination.  As a matter of law, neither maintaining a personnel file nor keeping notes on interactions with an employee is an adverse employment action. *See Lee*, 2001 WL 34031217, at *14 (holding that keeping an employee's personnel records in a supervisor's office was not an adverse employment action because the employee failed to show how it had an impact on her job).

### (viii)    Additional Pay

Plaintiff asserts that Defendants denied her "additional pay for the brand management and merchandising work that she performed, while her white counterparts were compensated for such work."  Pl. Am. Mem. of Law at 12.  This allegation does not appear in Plaintiff's Amended Complaint; Plaintiff raised it for the first time in her response to Defendants' motion for summary judgment. *See* Am. Compl.; Pl.'s Am. Mem. of Law at 12.  Because "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint," *Shah v.*

*Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007), "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment," *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (collecting cases). Accordingly, the Court will not consider this argument.[8]

### (ix)     Vacation

Plaintiff alleged in her complaint that she was denied the "same amount of vacation as other similarly-situated employees who are not African American." Am. Compl. ¶ 25. Plaintiff did not support this claim in her opposition to Defendant's motion for summary judgment. As a result, this claim was abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) (if a non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims").

### (x)     Termination

Defendants concede that Plaintiff's termination constitutes an adverse employment action. Defs.' Mem. of Law at 15.

In sum, Plaintiff's termination is the only alleged adverse action she has proved that can support her *prima facie* case.

---

[8]     Even if this argument had been properly raised, it would fail; Plaintiff proffers no evidence, beyond her own conclusory statements, that she was underpaid. *See* Pl.'s Am. Mem. of Law at 12. Plaintiff's opposition cites to deposition testimony in which Chandler describes her own compensation. But because Plaintiff and Chandler had entirely different roles, that testimony is inapplicable and insufficient to support Plaintiff's claim. Moreover, Defendants have produced evidence showing that Plaintiff's annual salary was higher than the only other senior product development manager, who is a white female. Abitabilo Reply Aff. Ex. C. Accordingly, Plaintiff has failed to offer evidence that she was ever underpaid vis-à-vis white colleagues.

## b. Inference of Discriminatory Intent

The Court must next determine whether Plaintiff has presented any evidence that raises an inference of discrimination associated with her termination. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action].'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

The majority of Plaintiff's argument regarding discriminatory intent relies on the alleged "discriminatory animus" of Defendant Chandler. Pl. Am. Mem. of Law at 5-6. Because Chandler made the decision to terminate Plaintiff, which is the only actual adverse employment action proved by Plaintiff, Chandler's words and actions require careful scrutiny.[9]

First, Plaintiff argues that Chandler's failure to supervise or hire a black employee in 25 years reflects her discriminatory animus. Pl. Am. Mem. of Law at 5. Although Chandler acknowledged that she had never hired or previously supervised an African-American employee, Chandler Dep. at 39:18-40:18, that fact, standing alone, without much more evidence regarding Chandler's prior positions and hiring responsibilities, does not raise a reasonable inference that Chandler harbors discriminatory animus against black people. Next, Plaintiff claims that Chandler's termination of Thierry Casias, another black employee, raises an inference of

---

[9] Plaintiff spills much ink arguing that discriminatory intent can be inferred from her many complaints discussed above. For the reasons discussed *supra*, however, none of her complaints, other than her complaint about being terminated, is an adverse employment action. Accordingly, the Court will not consider whether a discriminatory inference could be inferred from any of the circumstances surrounding those other alleged adverse actions, other than those in which Chandler, the person who made the decision to terminate Plaintiff, was involved.

discrimination.  Pl. Am. Mem. of Law at 6.  Although Chandler does not dispute that Casias'

"position was eliminated," Chandler also notes that she promoted Donell Hutson, a black male

employee, and that, in addition to terminating Plaintiff and Casias, she also terminated an Asian

female.  Defs.' 56.1 Stmt. ¶¶ 166-68, 170-71; Abitabilo Reply Aff. Ex. B.   Taken together,

these facts simply would not lead a reasonable juror to conclude that Chandler's hiring and

termination decisions give rise to an inference of discrimination.

Plaintiff also argues that Chandler's restriction on Plaintiff's ability to work from home

raises an inference of discrimination.[10]  Pl.'s 56.1 Resp. ¶ 141.  Although Huggard testified that

Chandler restricted everyone's ability to schedule work from home days in advance, Plaintiff

claims, with no supporting evidence or even an explanation of how she knows, that her "white

colleagues" were allowed to work from home "without being harassed."  Pl. Am. Mem. of Law

at 6.

When a plaintiff relies on evidence that she was treated less favorably than employees

outside of her protected group to raise an inference of discriminatory intent, she must establish

that she was "similarly situated in all material respects" to those employees.  *Mandell v. Cty. of

Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39

(2d Cir. 2000)).  "What constitutes 'all material respects' varies . . . from case to case, but 'the

plaintiff and those [s]he maintains were similarly situated must have been subject to the same

workplace standards,'" allowing for "a reasonably close resemblance of facts and

circumstances."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 445 (S.D.N.Y. 2014) (quoting *Graham*, 230

F.3d at 40); *see also Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 579–80

(S.D.N.Y. 2013).  Although this question is generally one of fact for a jury, "this rule is not

---

[10]        As detailed above, Plaintiff also argued that the restriction on her ability to work from home constituted an adverse employment action.  The Court rejected that assertion as a matter of law.

absolute and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790–91 (2d Cir. 2007) (internal quotation marks omitted).

Here, even accepting Plaintiff's *ipse dixit* in lieu of evidence that her requests to work at home were treated differently than white employees' requests, Plaintiff offers no evidence that the white employees to whom she refers were similarly situated to her in any material respect, let alone in all material respects. Moreover, Plaintiff does not dispute that she was allowed to work from home on several occasions, even after Chandler instituted a more restrictive policy regarding working from home. Pl.'s 56.1 Resp. ¶¶ 154-55. Because Plaintiff was permitted to work from home and there is no evidence that similarly situated white employees were treated any differently, no reasonable juror could find Chandler's restriction to be discriminatory.

Finally, Plaintiff asserts that Chandler's decision to restructure her responsibilities, as well as Chandler's "secret file" on Plaintiff, raise an inference of discrimination. During her first eight weeks at Bulova, Chandler conducted an assessment of the department and determined Plaintiff was "good at product development" but was not as strong in the area of merchandising/brand management. Chandler Dep. at 127:15-127:22, 164:10-164:20, 169:6-169:8, 180:6-180:18. As a result, Chandler decided to assign Plaintiff to a "bigger brand" to maximize her "strength" of working on product development. Chandler Dep. at 180:11-180:18.

Plaintiffs offers no evidence, beyond her own conclusory statements and subjective beliefs, to support her claim that this restructuring of responsibilities was "clearly based on race." *See* Pl. Am. Mem. of Law at 5. Such "bald assertions without more are insufficient to overcome a motion for summary judgment." *Gue v. Suleiman*, No. 10-CV-8958, 2012 WL 4473283, at *7 (S.D.N.Y. Sept. 27, 2012); *see also Gross v. NBC*, 232 F. Supp. 2d 58, 72 (S.D.N.Y. 2002) ("The

record is replete with [] conclusory statements and subjective feelings--not facts--in support of [plaintiff's] claims that she was treated differently because of her gender. Such beliefs cannot withstand a properly supported motion for summary judgment."). Furthermore, Plaintiff acknowledges that she was not the only employee whose job responsibilities were restructured after Chandler arrived; Plaintiff testified that another employee, Peter Yeung, an Asian male, had certain responsibilities taken away from him, and Huggard, a white male, testified that his responsibilities were also restructured. Pl. Dep. at 93:9-93:11; Defs.' 56.1 Stmt. ¶¶ 122-25; Huggard Dep. at 17:20-18:01, 176:19-176:22. In short, Plaintiff has failed to offer any evidence that the circumstances surrounding her work reassignment give rise to an inference of discrimination.

Plaintiff argues that Chandler's file of notes raises an inference of discrimination. Plaintiff claims that Chandler started keeping the notes "as a result of her lack of exposure to and suspicion of African-Americans." Pl.'s 56.1 Resp. ¶ 110. There is no evidence in the record to support this claim; the portions of Chandler's deposition to which Plaintiff cites do not support her assertion. Plaintiff asserts that Chandler "only documented perceived negative performance," but the citation that Plaintiff provides does not support that allegation. *See* Pl. Am. Mem. of Law at 5. Thus, Plaintiff's conclusory statements are nothing more than the type of "bald assertions" that cannot overcome a motion for summary judgment. *See Gue*, 2012 WL 4473283, at *7

Chandler testified that she took notes during her initial meeting with Plaintiff because it "went very differently than [she] had expected compared to all the other people that [she] met" in that Plaintiff had "a lot of [] issues that she wanted to share with [Chandler] about the company and many, many things she did not like." Chandler Dep. at 114:12-115:2. Moreover, Chandler

also took notes regarding Alessi, a white female, thereby undermining Plaintiff's already-unsupported claim that Chandler only kept notes regarding Plaintiff because she is black. Abitabilo Reply Aff. Ex. A.  Because Plaintiff has not offered any evidence that Chandler kept notes because of Plaintiff's race, and because Plaintiff relies solely on her own "unsupported testimony to give an invidious cast to neutral work place events," the maintenance of the notes fails to raise an inference of discrimination.  *Newsome v. IDB Capital Corp.,* No. 13-CV-6576, 2016 WL 1254393, at *17 (Mar. 28, 2016) (citing *Gorzynski*, 596 F.3d at 101); s*ee also Lee*, 2001 WL 34031217, at *14.

Because Plaintiff offers no evidence to raise an inference of racial discrimination beyond her conclusory statements and subjective feelings, she has failed to establish a *prima facie* case of discrimination.

> ### 3.     Defendants Have Offered Non-Discriminatory Explanations for Their Actions, and Plaintiff Has Not Shown that the Explanations Are Pretextual

Because Plaintiff has failed to establish a *prima facie* case, the Court need not consider whether the Defendants have provided non-discriminatory explanations for their actions.  Even if Plaintiff had established a *prima facie* case, however,  Defendants have proffered non-discriminatory reasons for their actions that have not been rebutted.

Once the employer "articulates a non-discriminatory reason for its actions," the presumption created by the *prima facie* case "drops out of the picture."  *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) (citations and internal quotation marks omitted).  "[T]he burden [then] shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (internal citations and quotation marks omitted), that is, to "demonstrate that the proffered reason

was not the true reason for the employment decision," *Littlejohn*, 795 F.3d at 307. That burden "merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against [him]." *Id.* at 307–08. The question then becomes "whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James*, 233 F.3d at 156.

Defendants assert that Plaintiff was terminated due to a budget reduction and a resulting need to reduce headcount. Defs.' 56.1 Stmt. ¶¶ 160-61. This explanation is corroborated by the contemporaneous and subsequent termination of other employees; Plaintiff was laid off at the same time as Jin Ah Roe, an Asian female, and Bulova subsequently terminated 23 other employees, including males and females of various races. Defs.' 56.1 Stmt. ¶¶ 20-21, 166-67. Additionally, Jin Ah Roe, an Asian female was terminated but Donell Hutson, an African-American male, was not. Defs.' 56.1 Stmt. ¶¶ 168-71. As between Plaintiff and Huggard, Huggard had seniority, and therefore Plaintiff was selected for termination. Defs.' 56.1 Stmt. ¶¶ 163-64. In short, Defendants have satisfied their burden of providing nondiscriminatory reasons for Plaintiff's termination. *See Kittrell v. Dep't of Citywide Admin. Servs. Div. of Pers.*, No. 10-CV-2606, 2013 WL 2395198, at *12 (E.D.N.Y. May 31, 2013), *aff'd*, 561 F. App'x 30 (2d Cir. 2014).

Plaintiff has failed to show that Defendants' reasons are pretextual; she has cited only her own conclusory statement that her termination was due to discriminatory animus. Pl.'s 56.1 Resp. ¶ 164. Although Plaintiff attempts to undercut Defendants' argument that they were facing financial pressure by asserting that Bulova still "managed to increase salaries and pay bonuses," Plaintiff fails to cite to any evidence in the record to support such a claim. Pl. Am. Mem. of Law at 19. Plaintiff cannot "rely on mere conclusory allegations" to defeat summary judgment.

*D'Amico,* 132 F.3d at 149; *see also Kittrell,* 2013 WL 2395198, at *12 (finding plaintiff's "speculative belief that others at [the company] received promotions and/or raises shortly after her dismissal," insufficient to prove Defendants' budgetary explanation was pretextual).

Because Defendants present unrebutted, non-discriminatory reasons for Plaintiff's termination, even if Plaintiff had presented a *prima facie* case, Defendants' motion for summary judgment must be granted as to Plaintiff's claims for racial discrimination under § 1981 and racial and gender discrimination under Title VII and NYSHRL.

### B. Plaintiff's NYCHRL Claim

Although "courts must analyze NYCHRL claims separately and independently from any federal and state law claims," a plaintiff bringing a claim under the NYCHRL must still "show[] that the conduct [complained of] is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013). The standard for causation under the NYCHRL "closely mirrors" that of Title VII and NYSHRL: under all three statutes, the plaintiff must show that discrimination played a role in the employer's decision-making. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75–76 (2d Cir. 2015); *Philip v. Gtech Corp.*, No. 14-CV-9261, 2016 WL 3959729, at *10 (S.D.N.Y. July 20, 2016) (holding that the federal, state, and city "statutory standards as to causation are coterminous"); *Bloomberg*, 967 F. Supp. 2d at 837 n.8. On summary judgment, an employer may "present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination played no role in its actions." *Philip*, 2016 WL 3959729, at *10 (internal quotation marks and alterations omitted).

As the Court has discussed, Plaintiff has failed to establish a *prima facie* case and has

failed to offer any evidence rebutting Defendants' nondiscriminatory reasons for termination.

*See supra* Parts II.B.3.  Thus, for the reasons discussed above, Defendants' motion for summary

judgment is granted as to Plaintiff's claims for race and gender-based discrimination under

NYCHRL.

III.    **Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Claims of a Hostile Work Environment**

        **A.  Plaintiff's Title VII and NYSHRL Claims**

Title VII and the NYSHRL prohibit "discriminatorily hostile or abusive [work]

environment[s]."  *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).  To establish a *prima facie*

case of hostile work environment, a plaintiff must show that "(1) [s]he is a member of a

protected class; (2) [s]he suffered unwelcome harassment; (3) [s]he was harassed because of

[her] membership in a protected class; and (4) the harassment was sufficiently severe or

pervasive to alter the conditions of employment and create an abusive work environment."  *Uko-*

*Abasi v. AmeriPath, Inc.*, No. 09-CV-3629, 2011 WL 924894, at *6 (S.D.N.Y. Jan. 25, 2011);

*Duch v. Jakubek,* 588 F.3d 757, 762 (2d Cir. 2009).  The work environment must be both

"subjectively and objectively hostile and abusive." *Ifill v. United Parcel Serv.,* No. 04-CV-5963,

2008 WL 2796599, at *10 (S.D.N.Y. July 17, 2008).  In order to be deemed pervasive, the

harassment and insults "must be more than episodic; they must be sufficiently continuous and

concerted."  *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577 (2d Cir. 1989).  The

"[m]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an

employee would not affect the conditions of employment to a sufficient degree to violate Title

VII."  *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986); *see also Richardson v. N.Y.*

*State Dep't of Correctional Serv.,* 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds*

*by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53 (2006).  In evaluating a claim alleging a hostile work environment, the Court must look at the totality of the circumstances to "determine whether an environment is 'hostile' or 'abusive,' and should consider the following nonexclusive list of factors: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's 'work performance.'" *Lee v. Sony BMG Music Entertainment, Inc.,* No. 07-CV-6733, 2010 WL 743948, at *6 (S.D.N.Y. Mar. 3, 2010) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. at 21).

Here, Plaintiff alleges that two comments by Thumm, one comment by Neitzel, and Alessi's occasional hostility added up to a hostile work environment.  *See* Pl. Mem. of Law at 10, 13-14.  The Court finds that these were mere "isolated incidents" and were not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Duch,* 588 F.3d at 762; *see Richardson,* 180 F.3d at 437 ("Isolated incidents or episodic conduct will not support a hostile work environment claim.").[11]

Thumm's comment about Plaintiff's hair not being naturally straight and his ambiguous comment at a work event ("I don't know what you think you are doing but it isn't working") were two isolated incidents; they were not "sufficiently continuous and concerted in order to be

---

[11]     Plaintiff also complains that Thumm used the word "nigger" to describe African Americans.  Pl.'s Am. Mem. of Law at 3; Pl.'s 56.1 Resp. ¶ 55.  Significantly, this allegation was not in her Amended Complaint.  Because it is "inappropriate to raise new claims for the first time in submissions in opposition to summary judgment," *Beckman,* 79 F. Supp. 2d at 407, the Court need not accord any weight to this argument.  Moreover, Plaintiff admits that she never heard Thumm use such language.  Defs.' 56.1 Stmt. ¶ 102; Pl. Dep. at 282:13-282:17.  (The record indicates that Thumm used the word once at a meeting in 2014.  Troche Dep. at 104:17-105:10; Casias Dep. at 121:17-20; Defs.' 56.1 Stmt. ¶ 102.)  In any event, because Plaintiff never heard Thumm use such language, she cannot rely on this allegation (even assuming it were asserted in her Amended Complaint) to assert a hostile work environment claim.  *See Smalls v. Allstate Ins. Co.,* 396 F. Supp. 2d 364, 372 n.2 (S.D.N.Y. 2005) ("incidents that occurred years earlier and which Plaintiff did not witness, may not be used to sustain a hostile work environment claim."); *see also Walker v. Columbia Univ.,* No. 93-CV-3381, 1998 WL 567909, at *2 (S.D.N.Y. Sept. 3, 1998), *aff'd,* 182 F.3d 902 (2d Cir. 1999) (excluding racial slurs and comments not known by the plaintiff during the time he allegedly suffered the hostile work environment).

deemed pervasive." *Carrero,* 890 F.2d at 578. Although the comments may have made Plaintiff uncomfortable, "an unpleasant work environment does not amount to a hostile one," *Mauze v. CBS Corp.*, 340 F. Supp. 3d 186, 214 (E.D.N.Y. 2018), particularly given Plaintiff's testimony that Thumm never used any "vulgarity" or made any other derogatory comments based on her race or gender. Pl. Dep. at 282:17. Put differently, Thumm's isolated comments do not support a hostile work environment claim. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity.'") (internal citation omitted).

Similarly, Plaintiff fails to offer any evidence that Nietzel's comment and Alessi's conduct about which she complains were anything "more than episodic."[12] In fact, Plaintiff testified that she had an outsized reaction to Neitzel's outburst precisely because Neitzel had never displayed "such aggression like this particular instance," and he had "never spoken [] in an elevated tone, he never used profanity before." Pl. Dep. at 216:20-217:12. Thus, his outburst is the epitome of the type of "isolated incident" that cannot form the basis of a hostile work environment claim. As for Alessi's alleged harassment, Plaintiff admits that Alessi's behavior, which was minor, at best, improved following Huggard's intervention. Defs.' Stmt. 56.1 ¶ 140; Pl. Dep. at 238:25-239:7. Thus, the record indicates that neither Neitzel nor Alessi's behavior constitutes a hostile work environment. The Court also notes that Plaintiff has offered no evidence, beyond her own conclusory statements, Pl. Dep. at 219:3-219:10; 236:10-236:12, that either Neitzel's comment or Alessi's behavior was racially or gender motivated.

---

[12]     Alessi's alleged conduct consisted of placing Plaintiff's pay stub "on her desk in an aggressive manner" and failing to order office supplies for Plaintiff. Defs.' 56.1 Stmt. ¶ 138.

## B.  Plaintiff's NYCHRL Claim

Courts must analyze NYCHRL claims "separately and independently from any federal and state law claims." *Mihalik v*, 715 F.3d at 109.  Although NYCHRL must be construed more liberally than its federal and state analogs, "summary judgment still can be an appropriate mechanism for resolving NYCHRL claims." *Id.* at 111; *see also Lytle v. JPMorgan Chase*, No. 08-CV-9503, 2012 WL 393008, at *19 (S.D.N.Y. Feb. 8, 2012).  Additionally, NYCHRL is also "not a 'general civility code,'" and establishing that a plaintiff has "an overbearing or obnoxious boss" does not establish an actionable hostile work environment.  *Mihalik*, 715 F.3d at 110.  As explained above, Plaintiff has failed to show that Thumm and Neitzel's comments and Alessi's behavior were anything other than sporadic.  There is no evidence to support Plaintiff's contention that Thumm's "rude, racially hostile, and disrespectful treatment of [Plaintiff] permeated all of his interactions" with her; Plaintiff described two isolated comments and her general feeling that her "contributions were [not] well received by him."  Pl. Am. Mem. of Law at 5; Pl. Dep. at 267:6.  Thumm and Neitzel's comments and Alessi's alleged conduct are "at best, petty slights with no apparent connection to [Plaintiff's] race [or gender]."  *Morrison v. United Parcel Serv., Inc.*, No. 17-CV-2885, 2019 WL 109401, at *7 (S.D.N.Y.  Jan. 4, 2019).  Although "there is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim," *Rivera v. Rochester-Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 22 n.5 (2d Cir. 2014) (internal quotation marks and alterations omitted), even taken together, these isolated comments and conduct fall way short of establishing an environment that "would reasonably be perceived . . . as hostile or abusive." *See Harris,* 510 U.S. at 22.

Accordingly, Plaintiff's hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL are dismissed.

### III. Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Claims for Race and Gender-Based Retaliation

#### A. The Applicable Law

Retaliation claims under § 1981, Title VII, NYSHRL, and NYCHRL are all evaluated under the *McDonnell Douglas* burden-shifting standard. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)); *see also DeLuca v. Sirius XM Radio, Inc.*, No. 12-CV-8239, 2017 WL 3671038, at *23 (S.D.N.Y. Aug. 7, 2017). A plaintiff establishes a *prima facie* case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks*, 593 F.3d at 164. The elements of a *prima facie* case of retaliation under NYCHRL are "identical," except that NYCHRL employs a broader standard of an "adverse employment action" than its federal and state counterparts. *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016).

An employee engages in a "protected activity" when he "complains of an employment practice that he 'reasonably believes' violates the anti-discrimination laws." *Green v. Mount Sinai Health Sys., Inc.*, No. 17-CV-3999, 2019 WL 4392691, at *4 (S.D.N.Y. Sept. 12, 2019) (internal citation omitted); *see also Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). In order to constitute protected activity, the employee's complaint "must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by" the anti-discrimination laws, as opposed to complaining about unfair or unpleasant treatment generally. *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y.

2012) (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).

"Generalized complaints about a supervisor's treatment" are not protected activity. *Id.*; *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14–15 (2d Cir. 2013).

As to the causation prong of the *prima facie* case, "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

## B. Application to This Case

Plaintiff has failed to show that she engaged in any protected activity and thus cannot satisfy the first prong of a *prima facie* case for retaliation. Plaintiff has not offered any evidence that she ever indicated to anyone in a supervisory position that she believed she was being discriminated against because of her race or gender. Plaintiff admits that she did not specify that her complaints were rooted in a belief that she was being discriminated against. *See* Pl. Dep. at 110:13-110:23 (Plaintiff never complained that she was being "singled out as an African American" when her request for bereavement leave was denied because she "did not want to make [her supervisor] uncomfortable."); Defs.' 56.1 Stmt.¶ 60; Pl. Dep. at 251:5-253:8 (Plaintiff never told anyone in a supervisory position that she believed she was overlooked for the promotion to Brand Manager due to her race or gender); Defs.' 56.1 Stmt. ¶ 132; Abitabilo Aff. Ex. X (Plaintiff's complaint regarding Neitzel's comment made no reference to her race or gender); Huggard Dep. at 225:16-225:21 (Plaintiff never suggested that her complaints about

Alessi were based on race or gender). Thus, although Plaintiff complained frequently about many things, she never indicated that she was complaining about discriminatory conduct. Because the "onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to [her] membership in a protected class and that [s]he is not complaining merely of unfair treatment generally," Plaintiff has failed to demonstrate that she engaged in protected activity. *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009).

Plaintiff claims she engaged in protected activity when she was named as a potential witness in a demand letter served in connection with another employee's EEOC Charge. *See* Pl. Am. Mem. of Law at 21. This claim was raised for the first time in Plaintiff's opposition to Defendants' motion for summary judgment. As a result, the Court need not consider it. *Shah*, 252 F. App'x at 366. But even if the claim had been raised in Plaintiff's Amended Complaint, and even assuming it would constitute protected activity, it fails to support a claim of retaliation.

First, although "temporal proximity can support an inference of retaliation for purposes of establishing a *prima facie* case, the proximity must be very close." *Dhar v. City of New York*, 655 F. App'x 864, 865–66 (2d Cir. 2016) (quoting *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014)). Courts in this District generally have found two or three months to be the outer limit for establishing causation based on temporal proximity. *See, e.g., Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) ("[T]he passage of about two months between the protected activity and the adverse action appears to be the approximate dividing line."); *Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 538 (S.D.N.Y. 2017). Here, the demand letter that identified Plaintiff as a potential witness was filed with the EEOC on July 29, 2016. Brown Decl., Ex. 18. Plaintiff was fired on March 20, 2017, almost 8 months later. Defs.' 56.1 Stmt. ¶ 164. Thus, far too much time passed between Plaintiff's alleged protected

activity and her termination to support a *prima facie* case of retaliation based on temporal proximity.

Plaintiff has offered no other evidence to support a causal connection between her being named as a potential witness and her later termination. Specifically, Plaintiff fails to offer any evidence showing that Chandler was even aware that Plaintiff had been named in the demand letter. Accordingly, Plaintiff's argument that Chandler retaliated against her based on her being identified as a witness in the demand letter fails. *Barney v. Consol. Edison Co. of N.Y*, No. CV 99-823, 2009 WL 6551494, at *13 (E.D.N.Y. Oct. 1, 2009) ("[E]vidence that the specific decision-makers responsible for the adverse action were not aware of a plaintiff's protected activity is . . . relevant 'as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment.'") (quoting *Gordon*, 232 F.3d at 117); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 n.5 (S.D.N.Y. 2012). Finally, while Plaintiff was named in the demand letter, so were several other employees, including Huggard, who was not terminated. Defs.' 56.1 Stmt. ¶ 31. That fact undermines the notion that there is any causal connection between Plaintiff being named in the letter and her termination.

In short, even if being named in the demand letter constitutes protected activity, based on the record Plaintiff has compiled, no reasonable juror could find that Defendants retaliated against Plaintiff because of it. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's retaliation claims.

**IV.    Defendants' Motion for Summary Judgment is Granted as to Plaintiff's Claims Against the Individual Defendants.**

### A.  Plaintiff's Title VII Claim

There is no basis for personal liability against an individual defendant under Title VII. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir. 1995); *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009).  Accordingly, Plaintiff's Title VII claims against Defendants Thumm, Parker, Chandler, and Huggard are dismissed.

### B.  Plaintiff's § 1981, NYSHRL, and NYCHRL Claims

Courts in this District have explained that the standard for individual liability under § 1981 and NYSHRL is identical to the standard under Title VII.  *Hargett v. New York City Transit Auth*., 640 F. Supp. 2d 450, 474 (S.D.N.Y. 2009).  Courts therefore utilize the *McDonnell* Title VII "burden-shifting" framework.  *Id.*  Furthermore, the Second Circuit has explained that "the same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'" *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *see Dunson v. Tri–Maintenance & Contractors, Inc.,* 171 F. Supp. 2d 103, 113–114 (E.D.N.Y. 2001); *Kato v. Ishihara,* 239 F. Supp. 2d 359, 365 (S.D.N.Y. 2002).

Because Plaintiff failed to demonstrate a *prima facie* case and failed to raise a material issue of fact concerning whether the Defendants' nondiscriminatory reasons for her termination are pretextual, Plaintiff's claims against the individual defendants in their personal capacity under § 1981, NYSHRL, and NYCHRL are also dismissed.

**V.    Defendants' Motion for Summary Judgment is Granted as to Plaintiff's Tort Claim**

Plaintiff asserted a claim against Defendants for intentional infliction of emotional distress in her Amended Complaint, *see* Am. Compl.  ¶¶ 111-12, but failed entirely to respond to

Defendants' motion for summary judgment as to this claim. As a result, the claim has been abandoned. *See Jackson*, 766 F.3d at 195 (if a non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims.").

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment (Dkt. 53) is GRANTED as to all of Plaintiff's claims.

The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

**Date:  November 12, 2019**
**        New York, New York**

**VALERIE CAPRONI**
**United States District Judge**